No. 84-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE MARRIAGE OF

PAMELA SUE KING,

　　　　　　　Petitioner and Respondent,

　　and

JACK DEAN KING,

　　　　　　　Respondent and Appellant.

APPEAL FROM:　District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　William Law Firm; Richard Ranney, Missoula, Montana

　　　For Respondent:

　　　　　Goldman & Goldman; Joseph M. Goldman, Missoula, Montana

　　　For Children:

　　　　　Milodragovich, Dale & Dye; Karl Boehm, Missoula, Montana

Submitted on Briefs:　March 7, 1985

Decided:　May 13, 1985

Filed:　MAY 13 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Jack King appeals an order and an amended order of the Missoula County District Court which divided his and Pamela King's marital property, and established custody and visitation rights, and the support obligations of the parties to their two minor children. Two issues are presented for review: first, whether substantial evidence supports the District Court's award of nearly all the marital estate to the wife; and second, whether the District Court erred in awarding the parties' real property to the wife in lieu of requiring the husband to make child support payments. We affirm the District Court.

Jack and Pamela King married in March 1971, in Mexico. Thereafter, they resided in California, where their two children were born, in 1971 and 1973. In 1977, they moved to Montana. They separated in June 1980, and the District Court dissolved their marriage in June 1981, reserving the issues of division of marital property, custody, visitation rights and child support until a later time. Maintenance was neither sought nor awarded, and custody and visitation rights are not in issue on this appeal.

On February 29, 1984, the District Court entered findings of fact, conclusions of law and its order deciding those reserved issues. All parties filed certain objections to the order, and thereafter, on April 16, 1984, the court entered its amended findings, conclusions and order. That amended order awarded each party the personal property then in their possession, and awarded the family residence to Pamela.

Jack asserts several of the court's findings of fact are unsupported by substantial evidence. We will address them in order. In its finding no. 2, the court noted:

"The distribution of the proceeds of the sale of the family home if it is ordered sold makes inadequate provision for the support of the minor children of the parties."

Finding no. 3:

"A substantial hardship would be imposed upon the children of the parties if they would be required to vacate the family home if it is ordered sold."

Finding no. 4:

"The expenses of sale, including realtors' commissions, attorneys' fees and potential capital gain tax liability would take a disproportionate amount of marital assets needed for child support."

And no. 5:

"It would be in the best interests of the minor children of the parties to continue to reside in the family home."

Jack contends the division of property should be separate from and not contingent upon child support. However, a fair reading of § 40-4-202, MCA, shows that the District Court, in a proceeding for dissolution of marriage, may take into account support considerations, and may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estate of the parties for the support of their children. In reaching such a result, the court shall equitably apportion between the parties, the property or assets belonging to either or both. The court is neither required to divide each asset 50-50, nor to sell all the parties' property and divide the proceeds 50-50. Equitable apportionment is the guideline under any or all of the many factors which apply. To order the sale of the family residence would subject the marital estate to realty fees, would lose a favorable interest rate,

- 3 -

and would uproot the children from their home and possibly from their neighborhood. These findings are well supported in the record.

Finding no. 7 provided that if Pamela were awarded the residence, she would be able to devote sufficient monies from her earnings to support the children. Jack contends the finding is not supported by substantial evidence because she probably would be able to support the children without the award of the residence. His contention, even if correct, neither per se invalidates the finding, nor begs the conclusion that she would not be able to support them without the home. Rather, it is reasonable to view the finding in light of the court's order relieving Jack of a financial support obligation. Viewing the record in its entirety, as we must, we cannot say the finding was erroneous.

Jack also attacks finding no. 8, wherein the court noted he had not presented satisfactory evidence of his past or present income, nor satisfactory means of verifying his present or future income, given the nature of his occupation as a professional gambler. He did testify without objection that he earned approximately $1,000.00 per month in California from gambling winnings, and approximately $500.00 per month therefrom after the parties moved to Montana. Yet, when questioned further about his income, Jack was very evasive, and eventually conceded that there was no way of verifying his income. That makes it difficult to ascertain whether he would be able to make support payments. It is reasonable to conclude the court meant he did not have a regular paycheck as such. It is also reasonable to infer the court meant he had not presented sufficient income evidence to justify a different property division. In light of those

considerations, we feel the finding is supported by record evidence.

Jack next contends finding no. 9, that he would not pay any portion of the childrens' attorney fees, was based on the court's "suspicions and distaste for Jack's method of earning a living." The Supreme Court, in reviewing evidence on appeal, is not concerned with the motives of the trial court. Nor may we express our opinion as to the wisdom of its decisions. Rather, we look to determine whether the result comports with the law. The District Court was in the best position to examine the demeanor of the parties, the witnesses and the evidence, and the District Court has broad discretion in arriving at its decisions. We will not substitute our judgment for the District Court absent a clear abuse of that discretion. We fail to see how the court's finding that Jack would not pay the childrens' attorney fees abused its discretion.

Finally, Jack assails finding no. 10:

"Awarding the Petitioner the Respondent's share of the equity in the family home is the only reasonable means to insure that the Respondent will contribute to the care and support of the minor children of the parties."

Again, the District Court was in the best position to view the parties, the witnesses and the evidence, and to render a decision based on its view. Our role is not to examine other possible means of ensuring Jack will contribute to the care and support of his and Pamela's children, but to determine whether the means chosen has a lawful basis of support in the record. The income earned from Jack's chosen occupation as a professional gambler, is by its very nature, inadequate to ensure he will always or regularly or even predictably have that income. To accede to such speculation is a gamble that

- 5 -

neither party nor the District Court is advised to undertake. We find substantial evidence supports the findings of the District Court.

The second issue Jack presents is whether the District Court erred in awarding the custodial spouse the family residence "in lieu of any child support obligation on the part of the [non-custodial spouse.]" He contends the award was erroneous because the issues of property and support are totally irrelevant to each other. Pamela, on the other hand, claims the award was proper because the issues of property, support, custody and visitation rights are "inextricably interwoven." The record does not support a conclusion favoring either of those extremes. Rather, the District Court considered all the factors, and made a decision based on the extent to which they were interrelated. Custody and visitation rights are not issues raised on appeal. The property division and support findings, however, do call for a discussion.

We held in Perkins v. Perkins (1975), 168 Mont. 78, 540 P.2d 957, that where the husband was financially unable to contribute to the support of the minor children, it was not error to grant the wife a proportionally larger share of the marital property to offset her increased obligation. Similarly, in Bailey v. Bailey (1979), 184 Mont. 418, 603 P.2d 259, the trial court awarded the family residence to the wife, plus other property, for a total award of approximately 67% of the marital estate. After noting the District Court weighed all the applicable factors of § 40-4-202, MCA, we held a division of the marital estate which favors one party over the other may be acceptable if there is reason for it. Here, the District Court stated its reasons--the best

interests of the children are served by allowing them to remain in the family home; forced sale of the family home would divert and dissipate assets needed for support; and the only reasonable means to protect and promote the best interests of the children is to award the home to Pamela. That award was made in lieu of a support obligation.

No reasonable purpose would be served by ordering the residence sold. Jack would not reside there in any event, the children would be uprooted, and the marital estate would be lessened because of realty fees attendant to the sale.

The District Court's findings and conclusions are embodied in a ten-page summary attached to its order, delineating all the statutory criteria.

We believe the District Court did a thorough job of dividing the marital assets and resolving the respective support obligations of the parties. We hold there was no abuse of discretion.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices

- 7 -